2012 OK CIV APP 31

**John Ed MORGAN and Elaine Morgan, Respondents/Appellants,**

v.

**OKLAHOMA CORPORATION COMMISSION and Chevron USA, Inc., Applicants/Appellees.**

**No. 108,711.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Nov. 9, 2011.

Certiorari Denied Feb. 27, 2012.

---

72. Wife's Brief–in–Chief, p. 31; Husband's Response Brief, p. 24.

Wes Johnston, Johnston & Associates, Chickasha, Oklahoma, for Appellants.

Eric R. King, Leslie L. Lynch, Gable & Gotwals, Oklahoma City, Oklahoma, for Appellee Chevron USA, Inc.

Andrew Tevington, Michele Craig, Deputy General Counsel, Office of General Counsel, Oklahoma Corporation Commission, Oklahoma City, Oklahoma, for Oklahoma Corporation Commission.

JERRY L. GOODMAN, Presiding Judge.

¶1 John Ed Morgan and Elaine Morgan (Morgans) appeal from an August 17, 2010, order of the Oklahoma Corporation Commission (OCC). On appeal, the Morgans assert the OCC erred in hearing the matter as there is no justiciable controversy. Alternatively, they assert the OCC's finding that Chevron USA, Inc.'s (Chevron) use of the land was reasonable is beyond the OCC's jurisdiction. Based on the appellate record and review of the applicable law, we affirm in part and vacate in part.

## FACTS

¶2 The facts of this case are extensive and well known by the parties. A complete recitation of the facts is unnecessary to a resolution of this appeal. The Morgans own land in Stephens County, Oklahoma. Chevron operates oil and gas wells collectively known as the Velma Sims Sand (Vess) Unit, which is located on the Morgans' land. The Morgans assert many of the wells have been abandoned and have fallen into disrepair. In May 2007, the Morgans filed suit against Chevron, *inter alia*, for nuisance and trespass. The Morgans asserted, *inter alia*, Chevron had used more of the surface than was reasonably necessary for longer than was reasonably necessary and had failed to properly maintain the wells. In the suit, which has been stayed pending this appeal, the Morgans sought damages and to enjoin Chevron from continuing to use their property.

¶3 In June of 2009, Chevron hired experts to examine the Vess Unit. Based on their findings, Chevron initiated a separate proceeding before the OCC seeking approval of a plan of remediation for the Vess Unit. The plan largely consisted of cleaning up debris and remediating several of the wells

and surrounding areas. Chevron additionally requested the OCC to determine whether its operations complied with the OCC's Rules and Regulations, and "pose[d] no threat to the health, safety and welfare of the Respondents, nor the citizens of the State of Oklahoma." The Morgans sought dismissal, asserting the issues before the OCC were beyond its jurisdiction and the matter did not present a justiciable issue. The motion was denied.

¶ 4 A hearing was held on the merits of Chevron's application in October of 2009 before an Administrative Law Judge (ALJ). The ALJ issued a report on November 30, 2009, recommending Chevron's plan for remediation be approved. Chevron appealed, however, seeking to supplement the report with a finding that its' use of the Morgans' land was "reasonable." The cause was subsequently remanded to the ALJ, who issued a supplemental report on January 26, 2010. The report provides, in relevant part, "The Commission can regulate the use of land for operations and maintenance of well sites" and pursuant to its statutory jurisdictional authority, the testimony and exhibits "clearly show Chevron has made reasonable use of the at issue surface estate." The Morgans did not appeal the initial or supplemental report.

¶ 5 Subsequently, however, the Morgans filed a Motion to Settle Terms of Final Order on February 19, 2010. The ALJ ruled that a final order would be proposed based on both the original and supplemental reports. The Morgans appealed to the Commission en banc and Chevron moved to strike the appeal. The ALJ, as well as an oil and gas appellate referee, recommended the motion to strike be granted and the Morgans' motion to settle terms be denied. The OCC agreed and a final order of the OCC was subsequently filed on August 17, 2010. The Morgans appeal.

## STANDARD OF REVIEW

¶ 6 Issues of the OCC's jurisdiction are questions of law, which are subject to independent findings upon review. *S.P. Comm'n. Co. v. Corporation Comm'n. of Okla.*, 1978 OK 14, ¶ 11, 586 P.2d 327, 330;

*Union P.R.R. Co. v. Oklahoma Corp. Comm'n.*, 2001 OK CIV APP 56, ¶ 7, 23 P.3d 954, 956. Issues of law are reviewed *de novo*. *Young v. Macy*, 2001 OK 4, ¶ 9, 21 P.3d 44, 47. In a *de novo* review, we give no deference to the lower tribunal's legal ruling. *Fisher v. Fisher*, 2007 OK CIV APP 103, ¶ 3, 171 P.3d 917, 919.

## ANALYSIS

### A. Jurisdiction

¶ 7 For their first assertion of error on appeal, the Morgans assert the OCC, which is a tribunal of limited jurisdiction, exceeded its jurisdiction when it determined Chevron's operations on the surface were reasonable. The Morgans contend the issue of whether Chevron's operations used more of the surface than is reasonably necessary for longer than is reasonably necessary is a private rights dispute beyond the OCC's limited jurisdiction. Thus, the issue is not properly before the OCC.

¶ 8 Chevron disagrees, asserting the OCC has "exclusive jurisdiction, power and authority" over the "construction, operation, maintenance, site remediation, closure and abandonment of the facilities and activities...." 17 O.S.2001 and Supp.2009, § 52(A)(2) and 52 O.S.2001 and Supp.2009, § 139(B)(2). Chevron contends the OCC's determination that it made reasonable use of the surface was a proper exercise of its authority granted it by the Legislature to make and enforce orders to: 1) assure a greater ultimate recovery of oil and gas from the unit; 2) prevent waste; and 3) protect the correlative rights of the owners of the unit. Thus, the Morgans' jurisdictional challenge should be denied.

¶ 9 The OCC also asserts it has exclusive jurisdiction over the operation, maintenance, site remediation, closure and abandonment of facilities used in the drilling, development, production and processing of oil and gas on a lease. Thus, it had the duty to review Chevron's plan of remediation and determine whether its' wells should be plugged and abandoned or their operations permitted to continue. As part of this review, the OCC asserts it must determine whether Chevron and its' surface facilities are in compliance

with applicable rules and regulations. In short, whether Chevron's operations are reasonable. Accordingly, the OCC contends it properly determined the issue of reasonable use of the surface.

 ¶ 10 The OCC is a tribunal of limited jurisdiction. It only has such authority as is expressly or by necessary implication conferred upon it by the Oklahoma Constitution and statutes of the state. *Public Serv. Co. of Okla. v. State ex rel. Corp. Comm'n., ex rel. Loving,* 1996 OK 43, ¶ 21, 918 P.2d 733, 738; *Tenneco Oil Co. v. El Paso Nat. Gas Co.,* 1984 OK 52, ¶ 4 & fn. 1, 687 P.2d 1049, 1050 & fn. 1; *Merritt v. Corporation Comm'n.,* 1968 OK 19, ¶ 7, 438 P.2d 495, 497; *Meinders v. Johnson,* 2006 OK CIV APP 35, ¶ 19, 134 P.3d 858, 865. The OCC oversees the conservation of oil and gas and its jurisdiction is limited to the protection and resolution of public rights. *Marathon Oil Co. v. Corporation Comm'n of State of Oklahoma,* 1994 OK 28, ¶ 14, 910 P.2d 966, 969 (citing *Nilsen v. Ports of Call Oil Co.,* 1985 OK 104, 711 P.2d 98); *Tenneco,* 1984 OK 52, at ¶ 5, 687 P.2d at 1050; *Leck v. Cont'l Oil Co.,* 1989 OK 173, ¶ 7, 800 P.2d 224, 226. The OCC does not have jurisdiction to award damages or determine private rights disputes between an industry within its regulatory authority and an individual outside the limited powers granted by the Constitution and statutes. *Meinders,* 2006 OK CIV APP 35, at ¶ 19, 134 P.3d at 865 (citations omitted).

¶ 11 The protection of public rights includes the prevention of waste and the protection of correlative rights of owners of mineral interests in the land overlying a common source of supply. *Marathon Oil Co.,* 1994 OK 28 at ¶ 14, 910 P.2d at 969. *See also Tucker v. Special Energy Corp.,* 2008 OK 57, ¶ 9, 187 P.3d 730, 733 (citing *Leck,* 1989 OK 173 at ¶ 8, 800 P.2d at 226) (Public rights are involved when "a unitization order, pooling order, or order setting the allowables on the unit's well" affects "the correlative rights of all mineral rights owners in [a] common source of supply [in a] unit."); *Samson Resources Co. v. Corporation Comm'n,* 1985 OK 31, ¶ 9, 702 P.2d 19, 22 ("The recognized power and responsibility of the Commission to act to protect correlative rights [is] con-

fined to situations in which a conflict exists which actually affects such rights within a common source of supply and thus affects the public interest in the protection of production from that source as a whole.").

[A] matter of public rights must at a minimum arise "between the government and others." In contrast, "the liability of one individual to another under the law as defined," is a matter of private rights. Our precedents clearly establish that only controversies in the former category may be removed from Art. III courts and delegated legislative courts or administrative agencies for their determination. Private-rights disputes, on the other hand, lie at the core of the historically recognized judicial power.

*Tenneco Oil Co.,* 1984 OK 52, ¶ 21, 687 P.2d 1049, 1054–55 (citing *Northern Pipeline Co. v. Marathon Pipe Line,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)).

 ¶ 12 With respect to private rights disputes, "[s]ubject matter jurisdiction rests solely with the district court to determine private rights in mineral interests and oil and gas leaseholds...." *Grayhorse Energy, LLC v. Crawley Pet. Corp.,* 2010 OK CIV APP 145, ¶ 12, 245 P.3d 1249, 1254–55 (citing *Leck v. Continental Oil Co.,* 1989 OK 173, ¶ 6, 800 P.2d 224, 226). The OCC "is without authority to hear and determine disputes between two or more private persons or entities in which the public interest is not involved." *Grayhorse Energy, LLC,* 2010 OK CIV APP 145 at ¶ 12, 245 P.3d at 1255 (citing *Rogers v. Quiktrip Corp.,* 2010 OK 3, ¶ 7, 230 P.3d 853, 857 (footnote omitted)). When the conflict does not affect the "rights within a common source of supply and thus" does not affect "the public interest in the protection of production from that source as a whole," the district courts, and not the OCC, have jurisdiction *Grayhorse Energy, LLC,* 2010 OK CIV APP 145, at ¶ 12, 245 P.3d at 1255 (citing *Samson Resources Co. v. Corporation Comm'n,* 1985 OK 31, ¶ 9, 702 P.2d 19, 22). *See also Rogers* at ¶ 6, 230 P.3d at 857 ("[t]he function of the [OCC] is to protect the rights of the body politic; private rights and obligations of private parties lie within the purview of the district court."); *Meinders v.*

*Johnson,* 2006 OK CIV APP 35, at ¶ 27, 134 P.3d at 867 (citing *Tenneco Oil Co.,* 1984 OK 52 at ¶ 20–23, 687 P.2d at 1053–54).

¶ 13 By order filed August 17, 2010, the OCC made the following conclusions of law, *inter alia:*

13. [Chevron] is, or has, remedied problems on the Unit. [Chevron's] operations comply with OCC rules and relevant law and activities on the Unit comport with the customary amount of land used for oil and gas operations. Whether the Operator's use of the surface is reasonable in a nuisance or trespass action is beyond the jurisdiction of the OCC.

14. Testimony regarding reasonable use of the surface as it relates to a nuisance or trespass action is not considered in this Order. However, testimony concerning reasonable use of the surface for conducting oil and gas operations is properly considered by the OCC.

15. [ ] "The Commission can regulate the use of land for operations and maintenance of well sites." In conformance with the Commission's above cited statutory jurisdictional authority, the testimony and exhibits clearly show Chevron has made reasonable use of the surface estate at issue pursuant to those OCC jurisdictional grants.

16. [Chevron's] use of surface property in areas of the Commission's statutory authority including, but not limited to, oil and gas operations, the protection of correlative rights of all owners, drilling, development, producing and processing of hydrocarbons and construction, maintenance and site remediation of exploration sites, is reasonable.

¶ 14 Chevron did not initially seek a finding of reasonableness, framing the issue in its application as a plan to remediate its operations for purposes of public rights and safety. Only in later hearings before the ALJ and on appeal to the OCC did Chevron urge a finding that its use of the surface was reasonable. The purpose of Chevron's insistence, admittedly, is to seek issue preclusion

in the district court case based on the OCC's order.[1] Upon reviewing the record on appeal and applicable authority, we agree with the Morgans that the OCC exceeded its limited jurisdiction when it determined Chevron's use of the surface was reasonable.

■ ¶ 15 The OCC clearly has "exclusive jurisdiction over the operation, maintenance, site remediation, closure and abandonment of facilities used in the drilling, development, production and processing" of oil and gas on a lease and it is charged with the duty to promulgate and enforce rules and issue and enforce orders governing and regulating the oil and gas industry. *See e.g.,* 27A O.S.2001 and Supp.2009, § 1–3–101(E)(1) and (2); 52 O.S.2001 and Supp.2009, § 139; and 17 O.S. 2001 and Supp.2009, §§ 52, 53.1, and 53.2. As part of this duty, the OCC may properly determine whether an operator has complied with applicable statutes, rules, and regulations. For example, the OCC may determine whether an operator has removed surface trash and debris from facilities, maintained their facilities in a neat and orderly manner, maintained lease roads in a passable condition, and whether a well should be temporarily or permanently plugged. *See e.g.,* 17 O.S. 2001, § 53; 17 O.S.2001, § 53.1; OAC 165:10-3-17; and OAC 165:10-11-9. However, claims regarding "the relationship of the parties; their duties; their rights and obligations; and the existence of liability for the breach of such duties," may not be considered by the OCC and are exclusively within the district court's jurisdiction. *Samson Res. Co.,* 1985 OK 31, at ¶ 15, 702 P.2d at 23; *see also Tenneco,* 1984 OK 52, 687 P.2d 1049.

■ ¶ 16 In the present case, the Morgans have asserted Chevron's use of the surface was unreasonable in violation of the parties' lease. The common law has long recognized that an oil and gas lease carries with it the right to use the land as may be necessary to perform the obligations under the lease and that an oil and gas lessee (or operator) may enter and occupy the surface of the land to the extent reasonably neces-

---

1. Upon receiving the OCC's final order, Chevron filed a second motion for summary judgment in the district court case asserting the issue of rea-

sonable use had been conclusively determined by the OCC and that issue preclusion applied.

sary for exploring and marketing oil and gas. *Lierly v. Tidewater Pet. Corp.*, 2006 OK 47, ¶ 20, 139 P.3d 897, 903 (citing *Anschutz v. Sanders*, 1987 OK 11, ¶ 5, 734 P.2d 1290, 1291; *Davon Drilling Co. v. Ginder*, 1970 OK 51, ¶ 11, 467 P.2d 470, 472–473). See also *Davis Oil Co. v. Cloud*, 1986 OK 73, ¶ 9, 766 P.2d 1347, 1355 (The implied covenant to reasonable use of the surface estate is "a part of the written lease as fully as if it had been expressly contained therein.") This "right," frequently termed an implied covenant or easement, arises from the obligations created by the parties' lease. Although an operator has the right to enter upon the land and make use of the surface to carry out its operations, such right is not unlimited. Any right the operator may have to make use of the surface is limited in that it may only use so much of the surface as is reasonably necessary. See *Davis Oil Co.*, 1986 OK 73, 766 P.2d 1347. The question whether an operator's use of the surface estate is reasonable is a question of fact. *See, e.g., Texaco, Inc. v. Joffrion* 363 S.W.2d 827 (Tex.Civ.App. 1962)(The question of reasonable use of the surface was one of fact, proper for jury determination); *Union Producing Co. v. Pittman*, 245 Miss. 427, 146 So.2d 553 (1962)(Question of fact for the jury whether mineral owners had used more leasehold surface than was reasonably necessary for their use in the drilling operation). In the absence of a statute, regulation, or lease provision to the contrary, unless the conduct of an operator in accessing, exploring, drilling, and using the surface is reasonable and necessary to the development of the mineral interest, the conduct may be a trespass or nuisance. See *Gerrity Oil & Gas Co. v. Magness*, 946 P.2d 913 (Colo.1997)(The rule of reasonable surface use provides an operator's conduct is "unauthorized," *i.e.*, a trespass, when it is not reasonable and necessary to the development of its mineral interest).

¶ 17 Accordingly, because the right to reasonable use of the surface is a right implied from the parties' oil and gas lease, we find the present dispute concerns the liability of a private individual or entity to another. Thus, the dispute is a private right properly within the district court's jurisdiction. *Hadson Petro. Corp. v. Jack Grynberg & Assoc.*, 1988 OK 100, ¶ 4, 763 P.2d 87, 89 (Disputes arising concerning private rights under the terms of a contract, as distinguished from public issues concerning the conservation of oil and gas initiating from a pooling order, properly lie in the district court rather than in the OCC); *Leede Oil & Gas, Inc. v. Corporation Comm'n*, 1987 OK 117, ¶ 10, 747 P.2d 294, 297 (Where the propriety of unit development costs is a question governed by private agreement between parties holding interests in the unit, the private rights nature of the action would properly place the question within the district courts for determination). The OCC therefore exceeded its limited jurisdiction in determining Chevron's use of the surface was reasonable.

¶ 18 Chevron contends, however, that the Morgans failed to exhaust their administrative remedies by failing to appeal the ALJ's initial or supplemental report. As a result, the OCC's August 17, 2010, order should be affirmed.

¶ 19 As a general rule, judicial review of an agency order is not permitted until all administrative remedies have been exhausted. *Double LL Contractors, Inc. v. State ex rel., Dept. of Transp.*, 1996 OK 30, ¶ 17, 918 P.2d 34, 39. However, premature judicial review is permissible when administrative remedies are inadequate. *Id.* at ¶ 17, 918 P.2d at 39 (citing *Mattoon v. City of Norman*, 1980 OK 137, ¶ 19, 617 P.2d 1347, 1350). Remedies are inadequate when unavailable, ineffective, or futile to pursue. *Double LL Contractors*, at ¶ 17, 918 P.2d at 40 (citing *Lone Star Helicopters, Inc. v. State*, 1990 OK 111, 800 P.2d 235). Another exception may be available where a challenge is made to the power of the agency to act at all under the statutory scheme it is charged with administering. *Ledbetter v. Oklahoma Alcoholic Bev. Laws Enf. Comm'n*, 1988 OK 117, ¶ 12, 764 P.2d 172, 179.

¶ 20 In the present case, the Morgans have challenged the OCC's jurisdiction to act. The question of jurisdiction is primary and fundamental in every case and must be inquired into and resolved by this Court both as to its own jurisdiction as well as to the jurisdiction of the court or agency

from which the appeal is taken, whether raised by a party or not, and may be done sua sponte. *Broadway Clinic v. Liberty Mut. Ins. Co.,* 2006 OK 29, ¶ 25, 139 P.3d 873, 880. Accordingly, we reject Chevron's assertion that the OCC's order should be affirmed for failure to exhaust administrative remedies.

¶ 21 Therefore, to the extent paragraphs 13, 14, 15, and 16 in the OCC's August 17, 2010, order make reference to or determine Chevron's use of the surface was reasonable, those paragraphs are vacated. Because the Morgans have not challenged Chevron's plan of remediation, all other portions of the order are affirmed.

¶ 22 AFFIRMED IN PART, VACATED IN PART.

RAPP, J., and THORNBRUGH, J., concur.