OSCN Found Document:THE PHOENIX GROUP HOLDING CO. v. STATE ex rel. OKLA. CORP. COMM'N.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 THE PHOENIX GROUP HOLDING CO. v. STATE ex rel. OKLA. CORP. COMM'N.
2016 OK CIV APP 19
Case Number: 112920
Decided: 03/02/2016
Mandate Issued: 03/31/2016
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2016 OK CIV APP 19, __ P.3d __

 

THE PHOENIX GROUP HOLDING COMPANY, Appellant,
v.
STATE OF OKLAHOMA, ex rel. OKLAHOMA CORPORATION COMMISSION, a state agency; and COMMISSIONERS PATRICE DOUGLAS, BOB ANTHONY, and DANA L. MURPHY, Appellees.

APPEAL FROM THE OKLAHOMA CORPORATION COMMISSION

AFFIRMED

Chandra R. Graham, CHANDRA GRAHAM, PLLC, Oklahoma City, Oklahoma, for Appellant
Patricia L. Franz, Robert J. Campbell, Jr., ASSISTANT GENERAL COUNSEL, OKLAHOMA CORPORATION COMMISSION, Oklahoma City, Oklahoma, for Appellees

KEITH RAPP, JUDGE:

¶1 The Phoenix Group Holding Company (Phoenix) appeals a Final Order of the Oklahoma Corporation Commission (OCC) denying its motion to set aside or vacate an OCC Order that clarified a previous OCC Order and denied all other requests by Phoenix for relief.

BACKGROUND

¶2 Phoenix was a consultant to the owners of a convenience store that had a gasoline storage tank. Gasoline storage tanks are regulated by OCC to assure safety and absence of leakage. The owners were required to file reports. Apparently, Phoenix provided consultation to the owners about compliance.

¶3 OCC received a report of a gasoline leak. OCC instituted an investigation against the owners for reimbursement of the costs of remediation due to the leak. OCC requires a showing of substantial noncompliance in order to obtain reimbursement.

¶4 OCC informed owners that its reports were deficient in several instances and did not include required information. OCC asked owners to submit the reports for the purpose of mitigating any fine.

¶5 Phoenix transmitted records, which included volt meter readings. Upon examination of the report and further investigation, OCC learned that there were no volt meters on the gas storage system. The owners were offered the opportunity to withdraw the reports that included volt meter readings. A Phoenix representative sent a set of acerbic, caustic emails to the OCC employee conducting the investigation. Ultimately, an explanation was offered to the effect that the volt meter belonged to and was used by Phoenix.

¶6 OCC instituted a proceeding against the owners and their store to assess a fine. Phoenix was named as an interested party and served with notice. However, OCC claimed no relief against Phoenix. Phoenix did not participate in the proceeding.

¶7 During a hearing in the proceeding, the administrative law judge (ALJ) inquired of the OCC representative about a recommendation for a fine. The representative's response, in part, expressed a belief, but without any basis for so stating, that the store owner received bad advice from its consultant. The ALJ subsequently commented to the store owner that the ALJ did not "think you got very good advice from the consultant." The ALJ further commented about the consultant's "rudeness and lack of courtesy."

¶8 The ALJ imposed a substantially reduced fine and the OCC affirmed. The Order became final and no appeal was filed. The OCC's final order in the proceedings is dated December 30, 2010.

¶9 Phoenix complained to the OCC Administrator about the comments, but apparently without receiving its desired result. On September 8, 2011, the Administrator filed the present case. In this action, the Administrator sought a review of the foregoing proceedings, and an opportunity for Phoenix to respond to the comments about the consultant and the consultant's advice, and other unspecified relief.

¶10 Phoenix filed a response. In the response, it claimed that the ALJ and the OCC representative made defamatory statements in the proceedings. Phoenix specifically requested an order for a public and written retraction of the statements. Phoenix requested that the apology and retraction be placed in the file of the enforcement proceeding. Phoenix specifically requested that the apology and retraction be made by the ALJ and the OCC representative. Phoenix then requested attorney fees and reimbursement for the time spent by its representative.

¶11 After a hearing on the Administrator's application concluded in September 2011, the parties were unable to agree upon the wording of a final order after numerous exchanges.[1] On April 13, 2013, Phoenix filed a motion to settle the terms of the Final Order in the present case.

¶12 It appears that the OCC then moved to dismiss and withdraw the Administrator's application. Phoenix responded. The ALJ concluded that OCC did not engage in oppressive or delaying conduct in that case and denied Phoenix's request for attorney fees.

¶13 The ALJ also recommended that the motion to dismiss be denied. The ALJ wrote:

It is abundantly clear from review of the proceedings . . ., that several essential and regrettable mistakes were made by the OCC's staff and other parties to the enforcement action that resulted in erroneous assumptions by the OCC's witness, which the ALJ . accepted as a correct and proper investigation of the incident. The record . certainly demonstrates unfortunate mistakes were made in the Staff's investigation, and erroneous assumptions were included in testimony which resulted in erroneous points in the ALJ's rationale for the fine assessments recommended.. The instant ALJ recommends that a final order be entered (in this cause) in the form of a referral of the matter to the PTSD[2] for a proper disposition by report regarding the erroneous allegations and inferences negatively impacting the Consultant's License held by The Phoenix's Group pursuant to OAC 165:29-3-99(g) and (h).[3]

¶14 The cause eventually came before the Commissioners for decision. The Final Order entered by the Commissioners recited the history of the Enforcement Cause, including service on Phoenix and its absence from the hearing. The Final Order continued with a recital of the history of the Administrator's application, including the evidence from Phoenix which the Commissioners described as "to the effect that the Phoenix Group did not prepare the substantial compliance documents thus submitted to the Commission, and was not at fault for any erroneous substantial documents submitted to the Commission."

 

¶15 The Final Order then reads:

The Commission has been requested in this Cause to correct and modify Order No. 581667, which is a final order that was not appealed. The Commission does not believe modification of the final order is necessary or permissible. The Commission does hereby clarify that in Final Order No. 581667, the Commission did not find or conclude that The Phoenix Group was at fault. The Commission further clarifies that Cause EN No. 201000122 was not an action to suspend, revoke, or otherwise effect (sic) The Phoenix Group's license, and that the final order issued therein did not suspend, revoke, or otherwise act upon The Phoenix Group's license.[4]

The Commission finds that the Phoenix Group's requests for affirmative relief should be denied, including, but not limited to, the request for written apologies, redaction of transcript and audio recording material, and an award of attorney's fee and costs, and that referral to the Petroleum Storage Tank Division for disposition by report should be denied.

¶16 The Commissioners then reiterated the findings as the Final Order of the Commission. Phoenix moved to set aside or modify this Order.[5] In this motion, Phoenix first maintained that the Final Order did not conform to the OCC Rules regarding form and content of a Final Order.

¶17 Next, Phoenix argued in its Motion that the Commissioners failed to make detailed findings of fact and conclusions of law. Thus, the conclusion that relief is neither necessary nor permissible has no legal basis according to the argument.

¶18 Phoenix took issue with the finding in the Final Order that the enforcement cause did not find or conclude that Phoenix was at fault. Phoenix argued that the reduction of the fine necessarily meant that there was a finding of fault on the part of Phoenix, notwithstanding the absence of any statement to that effect in the enforcement order.

¶19 The Motion argued that Phoenix was deprived of a fair hearing due to the substitution of a new administrator after resignation of the person originally involved. The Commissioners authorized the substitution in the Final Order. However, Phoenix has not briefed this point or supplied any legal authority showing Commissioners erred by permitting the substitution. Therefore, this issue will not be considered. Okla.Sup.Ct.R. 1.11(k), 12 O.S. Supp. 2015, Ch. 15 app. 1.

¶20 The OCC denied the motion. Phoenix appeals.

STANDARD OF REVIEW

¶21 The issue in this appeal is straightforward: Did the Oklahoma Corporation Commission err when it (a) ruled that modification of the final order is neither necessary nor permissible and clarified its enforcement order as quoted above; and (b) denied the Phoenix Group's request for affirmative relief including, but not limited to, the request for written apologies, redaction of transcript and audio recording material, and an award of attorney's fee and costs, and declined to follow the ALJ's recommendation for referral to the Petroleum Storage Tank Division for disposition by report?

¶22 This Court will review questions of law de novo. People's Elec. Coop., Inc. v. State of Okla. ex rel. Oklahoma Corp. Comm'n, 2002 OK CIV APP 57, 50 P.3d 579; see Morgan v. Oklahoma Corp. Comm'n, 2012 OK CIV APP 31, ¶ 6, 274 P.3d 832, 835 (Commission jurisdiction).

ANALYSIS AND REVIEW

¶23 Clearly, the OCC exonerated Phoenix from any blame, responsibility, or charge or inference of wrongdoing in connection with the convenience store and its gasoline storage tank and compliance with applicable law. Phoenix cites no authority showing that it is aggrieved by this exoneration by the Commissioners' Final Order.

¶24 It is equally clear that the OCC denied the request by Phoenix for written apologies, redaction of transcript and audio recording material, and an award of attorney's fee and costs, as well as the ALJ's recommendation for referral to the Petroleum Storage Tank Division for disposition by report. Phoenix has supplied absolutely no legal authority to show that the OCC was legally required to grant the requested relief.[6] Equally important, Phoenix has supplied absolutely no legal authority showing that this Court has the authority to command the Commissioners to grant this specific relief. Argument not supported by authority is not considered. Okla.Sup.Ct.R. 1.11(k), 12 O.S. Supp. 2015, Ch. 15 app. 1.

¶25 Thus, the lengthy arguments by Phoenix directed to the form and content of the Final Order, the substitution of the OCC applicant, and all related matters are not pertinent and are immaterial.

¶26 The Oklahoma Corporation Commission Order No 625149, and the Order No. 626453 that denied the motion to set aside or vacate Order No. 625149 are affirmed pursuant to Okla.Sup.Ct.R. 1.202(a) and (d), 12 O.S. 2011, Ch. 15 app. 1.[7]

¶27 AFFIRMED.

 

THORNBRUGH, P.J., and BARNES, J., concur.

FOOTNOTES

[1] According to the OCC's Brief, one reason for the disagreement was the insistence by Phoenix that the Order contain allegations against the ALJ and the OCC representative, neither of whom had participated in this cause.

[2] Petroleum Storage Tank Division of the OCC.

[3] In this appeal, OCC disputes that Phoenix, as an entity, holds any license from OCC. OCC Brief, p. 12 n.9.

[4] Emphasis in the original. Cause EN No. 201000122 is the proceeding where the "poor advice" comments occurred. Final Order No. 581667 is the number of the final order entered in that cause.

[5] Record, p. 1,634.

[6] Phoenix argued about the form and content of the Orders, Due Process, and the lengthy period involved in this matter. None of these arguments address with legal authority whether Phoenix is aggrieved by the exoneration, whether the OCC has a legal duty to grant the specific relief requested, or whether this Court can command the OCC to grant the requested relief. Phoenix did receive a hearing and that hearing was instituted by OCC. The fact that Phoenix did not receive everything it desired in addition to the exoneration does not equate to a deprivation of Due Process of Law.

[7] The Rule reads:

In any case in which the court determines after argument or submission on the briefs that no reversible error of law appears and either

(a) the appeal is frivolous and completely without merit;
(b) the findings of fact of the trial court are supported by sufficient competent evidence;
(c) the verdict of the jury is supported by sufficient competent evidence;
(d) the opinion or findings of fact and conclusions of law of the trial court adequately explains the decision; or
(e) the trial court did not abuse its discretion; the court may affirm by an opinion citing this rule and indicating which one or more of the above criteria it has determined to be applicable. The opinion will be in the following form: "Affirmed under Rule 1.202 [(a)(b)(c)(d) or (e)]."

 






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2002 OK CIV APP 57, 50 P.3d 579, PEOPLE'S ELECTRIC COOP., INC. v. STATE EX. REL. OKLAHOMA CORP. COMM'N
Discussed
 2012 OK CIV APP 31, 274 P.3d 832, MORGAN v. OKLAHOMA CORPORATION COMMISSION
Discussed